STATE OF HAWAII *v.* SOLOMON PUA KAHUNA-HANA, JR. AND CHARLES PENIKILA APAU, JR.

No. 4317.

MAY 28, 1965.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS AND MIZUHA, JJ.

*Per Curiam.* Defendants were indicted, tried and convicted by a jury in the First Circuit Court of the crime of rape.

The principal question raised by this appeal is whether the trial court should have instructed the jury that "in order to conclude a rape occurred there must be not only an entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist," or whether it was sufficient that the jury was instructed that "the degree of resistance on the part of the female must be proportionate to the outrage, and the amount of resistance required necessarily depends on the circumstances."

The complaining witness had made approximately six trips to Honolulu as an airline stewardess, and was in the city for the usual layover rest period for crew members. The evidence was such that the jury could have found as follows: The complaining witness had been drinking during the afternoon of July 24, 1961 with members of her crew, and later that evening with her roommate and her date. After an argument with her date, who left her at approximately 11:00 P.M., and after being refused further service at the bar of her hotel, she decided to go out to get something to eat. While walking in an easterly direction on Kalakaua Avenue, she noticed a car proceeding in a westerly direction, which pulled over to the sidewalk. She ignored the remarks of the occupants and continued walking. The car pulled away and she next saw the same car with its two occupants stopped at the intersection of Paokalani Avenue and Kalakaua Avenue, which was directly in her path. She started around the car, when defendant Apau got out and approached her. She tried to dodge Apau, but he grabbed her from behind, his right hand grabbing her right arm, and his left hand grabbing her left arm. She told Apau "let go of me," and tried to get away but Apau pushed her to the car. As she continued to struggle, Apau punched her in the stomach which

knocked the wind out of her. She was shoved into the back seat by Apau, and as she struggled, he slapped her in the face and pushed his open hand against her face causing much pain to her nose. Although she had yelled earlier "stop it," she was afraid of being hit again and made no further attempts to get away.

Defendants took her to an apartment occupied by a friend, Lorenzo. She was pulled out from the back seat, and as she tried to run away, was caught, and despite her yelling, was taken into the apartment. She noticed a third person, Lorenzo, sleeping in one of the beds and who later left the room.[1] She was pushed on a bed by both defendants, and one of the defendants pulled off her muumuu (dress) while the other pulled off her panties. While defendant Kahunahana held her down, Apau climbed on her and had sexual intercourse with her. She struggled and tried to push herself up, but it was "pretty useless against the two of them." Kahunahana then exchanged places with Apau and had sexual intercourse with the complaining witness who testified "I was very, very much afraid. I didn't know if I was going to live through it, if they were going to kill me."

After Kahunahana left the room, Lorenzo returned and informed her that she could go home. While dressing, she took an envelope from a bureau top hoping that it would identify the assailants. She later turned it over to police authorities which led to the arrest of defendants.

She was dropped off at the hotel by the two defendants and Lorenzo. She immediately reported the offense to the authorities. Medical examination at 2:25 A.M., July 25, 1961 disclosed that her nose was abnormally red and tender on palpation and that she had a couple of red marks on the left side of her neck. The pelvic examination showed

---

[1] Lorenzo did not molest the prosecutrix in any respect.

many small fresh tears and abrasions of the vaginal orifice. An examination of specimen of fluid taken out from within her vagina with the aid of a speculum disclosed live sperms.

The prosecutrix emphatically denied contentions of the defendants to the effect that she had voluntarily spoken to Apau at the corner of Kalakaua and Paokalani Avenues and consented to getting into their car. She denied any voluntary love-making in the car or in bed with the defendants. She also denied undressing herself in the apartment and engaging willingly in sexual intercourse with the defendants.

Defendants specify as error the trial court's refusal to give defendants' requested Instruction No. 7 and the giving of State's Instruction No. 12. The instruction refused, and that given, follow:

*Defendants' Instruction No. 7, refused.*

"In the absence of threats or other things which make resistance impossible, in order to conclude that a rape occurred there must be not only an entire absence of mental consent or assent, but there must be the most vehement exercise of every physical means or faculty within the woman's power to resist penetration and persistence in such resistance until the offense is consummated.

"The term 'rape' imports not only force and violence on the part of the man, but resistance on the part of the woman. There must be force, actual or constructive, and resistance. In the absence of proof of resistance consent is presumed.

"However, you are further instructed that it is not necessary to show that the complaining witness resisted to the utmost of her physical power if she were deterred from doing so by fear of great bodily harm from the

threats and conduct of the defendants, or either of them."

*State's Instruction No. 12, given.*

"The degree of resistance on the part of the female must be proportioned to the outrage, and the amount of resistance required necessarily depends on the circumstances, such as the number and the relative strength of the parties, the age of the female, the physical and mental condition of the female, the uselessness of resistance, and the degree of force used.

"She need resist only until resistance becomes so useless as to warrant its cessation or until sexual penetration occurs, at which time the crime of rape is complete; and her failure to resist after that is immaterial."

Defendants contend that the trial court disregarded the rule pronounced in *Territory* v. *Nishi,* 24 Haw. 677. They argue that defendants' Instruction No. 7, if given, would have properly advised the jury that before they could convict the defendants, they must first find that the prosecutrix did exhibit "the most vehement exercise of every physical means or faculty within the woman's power to resist * * *."

We do not agree. Since this case was taken under advisement, we have ruled on two similar instructions in *State* v. *Dizon,* 47 Haw. 444, 390 P.2d 759. In *Dizon,* we considered resistance a relative matter, and stated: "This court, while recognizing that the strict rule might be called for in certain cases when warranted by the facts, is of the view that the allowance of flexibility to the rule is not only logical but is supported by a great preponderance of authorities. Apropos is the statement of the court in *State* v. *Risen,* 192 Or. 557, 562, 235 P.2d 764, 766

(1951) : 'There may be cases in which to place undue emphasis upon its [the rule's] requirement improperly will convert the issue into the trial not of the man but of the woman. Resistance is necessarily relative. It is accordingly not necessarily illogical for courts to apply the general rule requirement of most vigorous resistance to common cases and to modify it in varying degrees and peculiar circumstances, and to refuse to apply it to exceptional cases.' " *State* v. *Dixon, supra* at 457.

Consistent with our ruling in *State* v. *Dixon, supra,* we find no error in the trial court's refusal of defendants' requested Instruction No. 7, or in the giving of prosecution's requested Instruction No. 12.

The prosecutrix was not a resident of Honolulu. The city was strange to her despite several layover rest periods provided by the airline. Her social activities were confined to crew members. She had no previous meeting with defendants. Although she evidently was "high" at the time she left her hotel and started walking on Kalakaua, she ignored the calls of defendants when they first pulled up alongside of her. Defendants then intercepted her at Kalakaua and Paokalani Avenues, where defendant Apau dragged her off the street, punched her in the stomach and pushed her in the face and finally shoved her into the car which had its engine running, and immediately left the scene. At the apartment, her clothes were pulled off, and while one of the defendants held her down the other assaulted her, and they then exchanged places with each other. The prosecutrix did struggle and yell on several occasions, but was extremely frightened and was afraid that they were going to kill her.

After a careful review of the evidence, we are of the opinion that the jury was justified in finding that the complaining witness did offer such resistance to the force

used by the defendants as was required under the circumstances and did "all that she thought was possible or that she was personally capable of doing to demonstrate her nonconsent and resistance." *State* v. *Dixon, supra* at 457. This disposes of defendants' specification that the trial court erred in denying their motion for a judgment of acquittal or for a new trial on the alleged ground that "there was an absence of substantial element of resistance on the part of the complaining witness." The weight and credibility of the testimony of the witnesses was for the jury. From a review of all the evidence, we find there was substantial evidence to support the trial court's denial of the motion for judgment of acquittal or for a new trial. *State* v. *Dixon, supra* at 466-7; *State* v. *Carvelo,* 45 Haw. 16, 33, 361 P.2d 45, 54; *State* v. *Hassard,* 45 Haw. 221, 231, 365 P.2d 202, 207.

Affirmed.

*Ambrose J. Rosehill (Joseph L. Dwight, Jr.* with him on the briefs) for defendants-appellants.

*Bert S. Tokairin,* Deputy Prosecuting Attorney (also on the brief), for plaintiff-appellee.